

**SO ORDERED.**

**SIGNED this 06th day of April, 2011.**

_____
LEIF M. CLARK
UNITED STATES BANKRUPTCY JUDGE
_____

# United States Bankruptcy Court
Western District of Texas
San Antonio Division

| | |
|---|---|
| In re | Bankr. Case No. |
| Mark R. Travis & April D. Travis | 10-52813-C |
| *Debtors* | Chapter 7 |
| FIA Card Services, N.A. (f/k/a MBNA America Bank, N.A.) | |
| *Plaintiff* | |
| v. | Adv. No. 10-5118-C |
| Mark R. Travis | |
| *Defendant* | |

**Memorandum Decision and Order on Motion of Defendant to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)**

Came on for consideration the foregoing matter. The plaintiff has filed a complaint under section 523(a)(2) of title 11, seeking a determination that certain credit charges are nondischargeable. Defendant has moved to dismiss for failure to state a claim, relying on the Supreme Court's recent precedents to the effect that a complaint must

facially state a plausible basis for the claim asserted, failing which it should be dismissed. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007); *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009). Defendant says that this complaint fails to assert any factual basis beyond the bald assertions that the charges in question constituted a false representation of the defendant's intentions to repay, constituting fraud. Defendant adds that the complaint asserts reliance on a presumption that some of the charges are now nondischargeable, but fails to state the predicate facts that would raise that presumption. In fact, some of the facts stated, says the defendant, show that the presumption does *not* arise (*i.e.,* some charges were incurred prior to April 28, 2010, the boundary of the lookback period for purposes of raising the presumption).

Plaintiff counters that it has not yet had the chance to develop its case by means of discovery, explaining the paucity of facts pleaded in the complaint. Plaintiff also says that some of the charges in question are nondischargeable as a matter of law anyway, because they were used to pay otherwise nondischargeable tax debt. *See* 11 U.S.C. § 523(a)(14). However, though this contention is raised in the response, it is not pleaded in the complaint. Plaintiff further says that it need not rely on the presumption to make out its case for fraud under section 523(a)(2). Plaintiff points the court to two cases for the proposition that merely using a credit card is sufficient to make the case that the creditor was defrauded, provided other circumstantial facts are also present. *See In re Mercer*, 246 F.3d 391 (5th Cir. 2001); *In re Dougherty*, 84 B.R. 653 (9th Cir. BAP 1988). Once again, however, though the motion details a number of circumstantial facts, these facts are not pleaded in the complaint.

In the complaint, plaintiff alleges that the defendant had a credit card, that he used the credit card to incur charges totaling $13,722.24, that between March 31, 2010 and July 27, 2010, the defendant charged $2,977 in "retail charges", and incurred some $3,128.00 in cash advances and/or convenience checks, that $3,000 of "these charges" were "made" within the presumption period, that this use ran the card up to nearly its credit limit, that the usage constituted a representation of an intention to repay, on which the plaintiff relied, and that the defendant either had no ability to repay, or alternatively had an objective intention not to repay the charges, that, as a result, the credit was obtained by false pretenses, false representations, or actual fraud, and that plaintiff has suffered damages in the amount of $6,105 (the sum of retail charges and cash advances obtained in the period between March 31, 2010 and July 27, 2010, the date the debtor filed the bankruptcy petition). The additional assertions in the response to the motion are not contained in the complaint.

In *Twombly*, the Supreme Court said that Rule 8 (the generic counterpart to Rule 9, which imposes even more specific pleading obligations) requires pleading more than the mere possibility of loss causation, "lest a plaintiff with a largely groundless claim be allowed to take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value." A court must retain the power to insist on specificity before allowing a massive factual controversy to proceed. While the Court was talking about an antitrust case, its comments ring true in this context as well. Said the Court, "the threat of discovery expense will push cost-conscious defendants to settle even anemic cases before reaching those proceedings." *Id.*, 550 U.S., at 559.

These observations carry weight in the bankruptcy context. A debtor who files leaves all non-exempt assets with a trustee, and seeks to emerge with only his future income, his exempt assets, and a discharge from personal liability. If that debtor is sued by a creditor claiming its debt cannot be discharged, the choice is either to fight the charge, though lacking the resources to pay a lawyer to do so, or simply to settle with the creditor, often agreeing to reaffirm the debt. And this is motivated often by the simple fact that the debtor cannot afford the fight -- never mind whether the allegations are well taken or not. *See AT&T Universal Card Services Corp. v. Grayson (In re Grayson)*, 199 B.R. 397, 403 (Bankr. W.D.Mo. 1996) (highlighting the practice of some credit card companies in filing complaints primarily with a view to extract settlements from debtors, and moving to dismiss cases when it faced the prospect of having to prove its case in court); *see also* Margaret Howard, *Shifting Risk and Fixing Blame: The Vexing Problem of Credit Card Obligations in Bankruptcy*, 75 Am. Bankr. L.J. 63, 141 (Winter 2001) (pointing out that section 523(d) "has utterly failed adequately to control a particular type of creditor abuse -- namely utilization of 523(a)(2)(A) complaints to extract settlements or reaffirmations from debtors"). It is thus important to apply the *Twombly* standard rigorously to these sorts of complaints. Indeed, if anything, the more rigorous pleading standards applicable to fraud actions makes this scrutiny even more important.

Plaintiff would have it that, after *Mercer*, its pleading burden is virtually satisfied by simply alleging credit card use by a debtor who later files for bankruptcy. That is not what *Mercer* holds. While the case is justifiably criticized as an evisceration of the fraud standard at both common law and in the Bankruptcy Code, *see* Howard, *supra* at 139-140, it stops well short of relieving the creditor of its burden of proving facts in

support of its case. To the contrary, *Mercer* requires a creditor to show at trial that *each use* of the card was accompanied by an affirmative fraudulent misrepresentation of intention to repay the very debt then incurred in order to prevail. *See In re Mercer*, 246 F.3d 391, 408-09 (5th Cir. 2001) (noting that mere inability to repay a debt is itself not actionable, but may be a fact relevant in the totality of circumstances used to determine whether the debtor lacked the intent to repay the debt when the charge was incurred). *Mercer* explains that the extension of credit the basis of a plaintiff's cause of action occurs at card use, so the debtor's intent at the point of *each use* must be established -- or more critically, the debtor's affirmative lack of intent. The misrepresentation occurs when, at the time of each use, the facts show that the debtor did *not* intend to repay the debt. *Id.*, at 407-08 (care use representation of intent to pay is false if there is use *without* that intent). The plaintiff here correctly notes in its response to the motion the various factors that might be relevant to that lack of intent. However, none of these facts were pled in the complaint, save the "fact" that the charges were made in the six month period preceding the filing.

It is, of course, difficult to plead all the facts that might be relevant to the issue to be decided, but *Twombly* does not require so much. The Supreme Court has not restored demurrer motions, after all. It has merely insisted that a complaint be more than a recitation of the statute accompanied by a demand for payment. This complaint fails on that ground, as it now stands. Nor is it enough for the plaintiff to maintain that there "must have been" a misrepresentation of intent, else it would have been repaid. There are many explanations for card use in the shadow of bankruptcy that do not

amount to a misrepresentation of intent to repay. *See* Howard, *supra*.[1] It is incumbent on the creditor, as plaintiff, to plead sufficient facts to show why this particular credit card use is accompanied by a fraudulent misrepresentation regarding intent to repay. That is not present here.

The right result, however, is not dismissal of the complaint, but rather a directive to replead the complaint in light of this ruling, and with appropriate attention to the additional pleading requirements imposed by Rule 9. The motion is denied, with the proviso that the complaint be amended consistent with this decision, within not more than 20 days after the date of entry of this order. The ruling is without prejudice to the defendant's re-urging his motion if the amended complaint also proves deficient in light of *Twombly*.

# # #

---

[1] Notes Prof. Howard:

> [M]ost courts hold, and rightfully so, that the use of a credit card constitutes a representation of intent to repay. And the fifth element, regarding resulting loss, is obvious. But these realities do not justify Mercer's approach, under which the only inquiry pertinent to fraud in a credit card dischargeability case is whether the debtor was aware of his or her financial jeopardy. Rather, these realities make it all the more important that the elements of intent to deceive and of actual and justifiable reliance have substance.

75 Am. Bankr. L.J., at 143, n. 312.